W. H. HUTCHINS *v.* SMITH-HARRISON & Co.

[64 South. 789.]

SALES. *Delivery of goods including goods not ordered. Buyer's right to select.*

Where the seller delivers to the buyer the goods he contracted to sell, mixed with goods of a different description, not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest.

APPEAL from the circuit court of Sunflower county.
HON. J. L. WILLIAMS, Special Judge.

Suit by Smith-Harrison & Company against W. H. Hutchins. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Frank E. Everett,* for appellant.

According to the undisputed testimony of appellant he agreed to buy of appellee certain goods of a specified kind, quantity and quality and to be made up in a certain designated way. Then, if appellee did not ship the exact kind, quantity and quality and made up as directed by appellant at the time of the agreed purchase, there was no fulfilment of the contract on the part of appellee and no right of action accrued to him against the defendant if he refused to accept them. See Benj. on Sales, par. 689.

"Where goods of a specified quantity and quality are sold to a buyer in a distant state, the buyer has under such executory contract a reasonable time after the receipt of the goods from the carrier to examine them or to accept or reject them. And if the goods do not conform to the terms of specifications as to qualities, the existence of the qualities in such cases being part of the thing sold and essential to its identity, and a condition precedent to the sale, the buyer can notify the seller that he rejects them, that they are at his, the seller's, risk. It is not necessary that he return them?" See *Strauss* v. *Furniture Co.,* 76 Miss. 350; *Elliott* v. *Howison,* 40 So. 1026.

Now lets apply this general and universal principal to the case under consideration. In this case we have no written contract or order but only a verbal agreement to sell and to buy. Hutchins agreed with Joiner, the salesman of appellee, to buy certain goods of a particular kind, quantity and quality, to the extent of about fifty dollars. When the invoice and goods were received he immediately notified the appellee, upon receipt of the in-

voice, that he had shipped him more goods than he agreed to buy. When they were received he notified appellee. that the goods were not the kind ordered and that he would keep that portion which came up to the order and which were ordered and return the remainder; that he had such an agreement with the traveling salesman. The appellee did not object to the return of the goods, but to the contrary, tacitly admitted that appellant was correct in his statements and offered him a five per cent discount, to which he was not otherwise entitled to, to retain the entire shipment. See letter to Hutchins. Joiner does not dispute the statement of Hutchins in reference to this transaction at all. Then take in connection with the nondenial of the statements of Hutchins, the fact that there was no order signed by him or offered him for his signature and no duplicate of the order given him, which by the way is the universal custom in selling goods by traveling salesmen, and which would, had it been given, shown the transaction between them, and also the fact that Joiner's principal would not ship a new customer, such as Hutchins, a smaller order than seventy-five or one hundred dollars worth of merchandise, all go to show that Hutchins is correct in his statement as to what he bought.

Hutchins had a legal right to take from this shipment such goods as came up to the order and return the remainder. In this connection I call the attention of the court to the case of *Brawley v. United States,* reported in the 96 U. S. 168, where a written contract was executed by and between Brawley and a government official for eight hundred and eighty cords of wood, more or less, as the needs may be to be determined by the port commander. This agreement was made between them some days before the contract was signed up. After the agreement was made for the sale of this wood, Brawley cut the eight hundred and eighty cords of wood and took ten ox teams, teamsters and wood haulers from Minnesota to Dakota Territory for the purpose of delivering

the same and had actually delivered about fifty cords when the post commander decided he only wanted forty cords of the wood. In a suit against the United States to compel the payment of the contract price for the wood, all of which was delivered within a few feet of the post, the supreme court of the United States held that he was not entitled to recover, but that the officer had a right to take what he needed and refuse the remainder. Then certainly he would be entitled to select goods which we ordered from goods we did not order and retain the ones ordered and return the remainder.

Counsel for appellee seeks to justify the action of the lower court in refusing instructions asked by defendant there and granting a peremptory charge for the plaintiff, under the case of *Ormond* v. *Henderson,* 77 Miss. 35. However, there is quite a difference in the principal of that case and the case now under consideration. In *Ormond* v. *Henderson, supra,* it appears from the record that Hester, a broker in Meridian, agreed to sell Ormond ten barrels of granulated sugar. Hester, from the report of that case, had absolutely no connection with Henderson, not even any credit with him. After agreeing to sell Ormond ten barrels of surgar and having none of his own, he simply wired Henderson to ship Ormond twenty-five barrels of granulated sugar, doubtless thinking and intending, as a broker, to dispose of the other fifteen barrels and make a profit on it himself. Ormond admitted that upon receipt of the invoice from Henderson that he knew Hester had no sugar and that the shipment from Henderson to him was intended as a sale direct from Henderson to him and he accepted it as a sale by Henderson and not by Hester. There was no contract or agreement whatever between himself and Henderson prior to this shipment, by which Henderson was to ship certain goods of a certain quantity, quality and kind, but when he received the invoice, that was the first time he had any knowledge of any proposition by Henderson to

sell him this bill of goods and he then bound himself to pay the entire bill, first by his silence in not writing Henderson upon receipt of the invoice and second, by dealing with the goods as his own, without any agreement or understanding with Henderson. But in the case at bar, there was a specific agreement between Hutchins and Smith-Harrison & Co. for certain specified stuff, and immediately upon receipt of the invoice which conveyed the knowledge to Hutchins that they had shipped him goods he had not ordered, he notified them of that fact and told them he would keep such as he had bought. And then when the goods arrived, finding therein goods not ordered and some goods ordered not coming up to the specifications, he again wrote appellee and returned the goods to it. The facts in this case widely differentiate it from the case of *Ormond* v. *Henderson.* Therefore, I respectfully submit that this case should be reversed and remanded.

*Chapman & Johnson,* for appellee.

The first, and practically the only, question that presents itself to the mind of this court after a careful perusal of the record, the essential facts of which we have tried to state as impartially, briefly and accurately as possible, is whether or not, when there is a misunderstanding as to the quantity of goods ordered, or a mistake in the quality, and more goods are shipped than the buyer has ordered,, the buyer can select from the goods received those he claims to have ordered, and perhaps some others, and return the remainder without the consent of the shipper. Our contention is that when this state of facts arises the buyer must either accept or reject the entire shipment. The case of *Ormond* v. *Henderson,* 77 Miss. 34, cannot be differentiated in any material particular from the case at bar. In that case twenty-five barrels of sugar were shipped by Henderson to Ormond, from which shipment Ormond selected ten bar-

rels of sugar, turning the remaining fifteen barrels over to Hester, a broker, whom he thought to be an agent of Henderson's. Ormond had first ordered the sugar from or through Hester, and thereby Hester became his agent in that transaction, and Hester had wired Henderson to ship Ormond twenty-five barrels of sugar, which Henderson did, and thereby Hester was Henderson's agent in that transaction. After reciting the facts in the case, the court says: ''When Ormond learned of the mistake made by Henderson in shipping to him the twenty-five barrels of sugar, which he states he did learn when he received the account of the sale and the bill of lading, it was competent for him to refuse to accept the sugar, but he could not accept a part and reject a part, without Henderson's consent.

Where a mistake is made in reference to the quantity of goods, the buyer must accept all, or refuse to accept any, and give the seller notice of the mistake and that the goods are subject to his order. He cannot deal with the goods as his own.''

In the instant case, appellant learned of the mistake when the invoice of the goods was received by him on March 15 and it then became his duty, under the decision above cited, if he did not want all of the goods, to refuse to accept them, but he could not accept a part and reject a part without appellee's consent, which the record shows he never obtained. Appellant could have refused to accept all or to accept any, but he could not accept a part and reject a part, because by so doing he would then be forcing a new contract on appellee; on the other hand, appellee could not have forced appellant to accept all or any part of the goods because thereby it would have been forcing a new contract on appellant. The appellant, Hutchins, after the goods were received by him, opened them up and took out such part as he wanted, dealing with the goods as if they were his own and then returned the balance to appellee.

There need be but little said with reference to the quality of the goods since appellant only returned twenty-seven dollars worth of them on that account according to his testimony, and as to the quality, he made no complaint until almost two months had elapsed after the goods were sent back by him and he was about to be sued for their price. He states that none of the men's pants were cut full leg as ordered, but that still he retained one-half dozen of them, selecting what he wanted and returning the balance.

In view of the case of *Ormond* v. *Henderson, supra*, it hardly seems necessary to go further into this case and to discuss the authorities cited by counsel for appellant in his brief. No doubt there are some jurisdictions, perhaps a great many, holding that a buyer of goods has a right, when an excessive quantity is shipped by mistake, to select therefrom such part as he chooses and to return the balance, but our state has clearly taken the opposite view, and the case above cited is, we believe, the last utterance of our supreme court on this subject. In the case of *Strauss* v. *Furniture Company*, 76 Miss. 350, the entire shipment was rejected and the shipper immediately notified that the goods were subject to its order and held at its risk, so that case has no point in common with the present case; the case of *Elliott* v. *Howison*, 40 So. 1026, enunciated no new or different principle but holds that where a buyer is seeking to rescind a contract of sale on the ground that the seller did not perform his undertaking, he must act within a reasonable time and must return or offer to return the goods; the case of *Brawley* v. *United States*, 96 U. S. 168, does not touch this case at any point; in that case a clear distinction is drawn between contracts for the sale of a definite quantity of goods identified by reference to independent circumstances, such as an entire lot, or the quantity is specified by number, and contracts where the amount to be delivered is indeterminate, and dependent upon the discre-

tion of some one else so long as he acts in good faith; in that case the contract was for the delivery of eight hundred eighty cords of wood, more or less, as shall be determined to be necessary by the post commander for the regular supply, in accordance with army regulations, and the number of cords designated was construed to be regarded merely as an estimate of what shall be necessary, though the actual amount might fall far short of the estimate.

We respectively submit that the principles laid down in *Ormond* v. *Henderson, supra,* govern this case and that it should be affirmed.

Cook, J., delivered the opinion of the court.

According to the testimony of appellant, he ordered of appellee certain merchandise, but when the shipment arrived he discovered that appellee had not only shipped to him the goods ordered by him, but had shipped other goods not ordered. After discovering this fact, appellant says, he returned the goods not ordered and retained the goods ordered, and is ready to pay for the agreed value of the goods retained. Appellee refused to accept the goods returned, and instituted an action for the value of the entire bill shipped, claiming that appellant ordered the goods shipped; that appellant was not authorized to accept a part of the goods and return a part, even though he had not ordered the part returned. The court below accepted appellee's view of the law, and directed the jury to find for appellee, plaintiff below, for the full amount sued for.

The case as made by appellant is this: The buyer purchased and appellee agreed to sell certain kinds of goods, and the seller shipped the goods actually contracted for; but the seller mixed with the goods bought other goods not bought. When this was discovered, the buyer retained the goods the shipper contracted to deliver and rejected the goods he did not buy. Where the seller de-

livers to the buyer the goods he contracted to sell, mixed with goods of a different description, not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest. The contract actually made is binding on both parties, and the seller cannot defeat the buyer's rights to the goods bought by him by mingling with them other goods of a different description. Principles of Sales (Benjamin) rule 33, p. 148; *Cohen* v. *Pemberton*, 53 Conn. 221, 2 Atl. 315, 5 Atl. 682, 55 Am. Rep. 101; *Rodman* v. *Guilford*, 112 Mass. 405.

The case of *Ormond* v. *Henderson*, 77 Miss. 34, 24 So. 170, is cited to support appellee's contention that the buyer was bound to pay for the entire shipment, because of his acceptance of a part. We do not think that case is in conflict with the views above expressed. The facts of that case are entirely different from the defense made in this case. *Ormond* v. *Henderson* was, we think, correctly decided, whether the reasons for the decision given in the opinion of the court are sound or not.

*Reversed and remanded.*