Rubenstein *v.* Grossman-Winfield Millinery Company.

[69 South. 688.]

Sale. *Action for purchase price. Evidence.*

> In a suit on an open account for the purchase of a job lot of hats where the seller's offer was to sell the entire lot at stipulated price per dozen and the buyer agreed to accept the entire lot at this price, provided it did not contain more than three or four dozen. When the buyer received the hats and ascertained that the lot contained more than three or four dozen, the duty devolved on him of accepting or rejecting the lot as a whole. He could not, without the seller's consent, accept a part and reject a part.

Appeal from the circuit of Forest county.

Hon. P. B. Johnson, Judge.

Suit by Grossman-Winfield Millinery Company against L. Rubenstein. From a judgment for plaintiff, defendant appeals.

Appellant is a retail merchant doing business in the city of Hattiesburg, and appellee is a corporation en-

gaged in the wholesale millinery business in the city of New Orleans, La. This suit is on an open account for goods purchased by appellant from appellee, consisting of a number of items, liability for only one of which is denied. This item as it appears in the statement of the account is:

"27 1/3 doz. Child's Hats, Job $3.50 $95.67.".

At the close of the evidence the jury were instructed to find for appellee, and there was a verdict and judgement accordingly. In November, 1909, appellant called in person at the place of business of appellee in New Orleans and purchased from it a bill of millinery. Appellee's version of what occurred with reference to the item here in question can best be set forth in the language of one of its witnesses who participated in the sale, which was as follows:

"I was on the fourth floor when Mr. Rubenstein, accompanied by Mr. Grossman, came up on the fourth floor, and Mr. Grossman called me and stated that Mr. Rubenstein had come up there to buy jobs; we had those in the rear portion of the fourth floor, a lot of children's hats—'jobs' we call them—which Mr. Grossman offered to Rubenstein at $4.50 a dozen and Mr. Rubenstein looked over the hats and told him that he couldn't use them at that price, but that he would take the entire lot at $3.50, whereupon Mr. Grossman consulted me about the matter and, after deliberating a few minutes, he agreed to give Mr. Rubenstein the entire lot at $3.50 a dozen, and he even went so far as to take down about a half a dozen boxes to show Mr. Rubenstein the contents of the boxes, what they consisted of, and explained to him that the amount would average perhaps seventeen dozen, maybe more or less, because in the finer hats they would run about six to the box where on the cheaper grades they would run as high as twelve to the box, and Mr. Rubenstein stated that it was not a question of quantity, but it was a question of price, that he was looking after. . . ."

Appellant's version thereof in his own language was as follows:

"A.   After he had sold me the regular line, a few dozen things I thought I could use before Christmas, he told me that he had some good things for me upstairs and would take me up in the elevator and show them to me, and he first showed me a lot of hats.   Q.   You mean a job lot of hats?   A.   Yes, sir; twenty-seven and three fourths dozen hats.   He showed them to me and I told Mr. Grossman, that I was not a large business man, that I couldn't use that many hats, and I asked him how many he had in that lot, and he said not more than three or four dozen; I told him that there was a big lot of boxes, and that it looked like there were more than that; and he said that the boxes contained only one and two hats in a box and he said that it looked like there were about twenty-five boxes with one and two in a box, it would not amount to more than three or four dozen, and I said, if there is not more than three or four dozen, that I could use them, but I said: 'If there is any more than that I can't use them; I have not got enough trade to use more than three or four dozen.' He opened several boxes and showed me that there was not but one or two hats in a box, and I made a contract with Mr. Grossman that if there was not more than three or four dozen, he could slip them on.   After I had bought them and had looked in five or six boxes and had seen that there was not more than one or two in a box, maybe three in some boxes, I went on down, and pretty soon after that I received a car load of hats."

A "job lot" of goods, according to the evidence, consists of odds and ends accumulated from year to year and from various sources.   This particular "job lot" consisted of more than one season's styles and of varying qualities and prices, the regular prices thereof ranging from four dollars to twelve dollars or fifteen dollars per dozen; they were all bunched in one lot, and

offered at a uniform price in order that they might be disposed of.

R. S. Hall, for appellant.

I am sure that the appellees will insist that the case of *Ormond* v. *Henderson,* 77 Miss. 34, is decisive of this case. The facts of the case at bar are not identical to those in the case of *Ormond* v. *Henderson;* it could not be contended for a moment that if Hester, the broker that Ormond dealt with in Meridian had in fact been the agent of Henderson, and having delivered to Hester as Henderson's agent the fifteen barrels of sugar in excess of the ten barrels that he really bought, a recovery could have been had in that case. Ormond was mistaken as to the agency of Hester and therefore when he delivered to Hester the fifteen barrels of sugar for this purpose it was the same as if Ormond had retained and used it; in the instant case the appellant delivered the excess of the hats shipped him over to the appellee district, the parties with whom he contracted, and therefore the case of *Ormond* v. *Henderson* is not in point. This court in the case of *Ormond* v. *Henderson* is not in point. This court in the case of *Ormond* v. *Henderson* did use this language:

"Where a mistake is made in reference to the quantity of goods, the buyer must accept all, or refuse to accept any, and give the seller notice of the mistake, and that the goods are subject to his order. He cannot deal with the goods as his own, as Ormond certainly did in this case, without rendering himself liable for the purchase price."

Ormond dealt with the goods as his own in that he delivered to Hester the fifteen barrels as he might have to any other third party, but in the instant case Rubenstein did not deal with the hats as his own. He did retain four dozen hats that he had purchased and which the appellee agreed to sell him, and which I insist that

he had a perfect right to do, but the excess of the difference between the hats which he bought and those returned he dealt with as the property of the appellee, having immediately shipped them to the appellee at New Orleans over the railroad and in the same manner that he had delivered them.

According to the testimony of the appellant in this cause there was no mistake as to the quantity of the goods he bought, four dozen, and the appellee undertook to force him to accept twenty-seven and two thirds dozen. This was not a mistake on the part of either party. It was simply the act of one party trying to force the other party to exceed his wants and take more than he purchased.

The court also, in the case of *Ormond* v. *Henderson,* used this language: "When Ormond learned of the mistake made by Henderson in shipping to him twenty-five barrels of sugar, which he states he did learn when he received the account of the sale and the bill of lading, it was competent for him to refuse to accept the sugar, but he could not accept a part, and reject a part, without Henderson's consent."

Ormond, therefore, had knowledge that the shipment of twenty-five barrels of sugar to him by Henderson included a shipment of ten barrels intended for him by the broker, Hester, and fifteen barrels for Hester; of course he could not deliver fifteen barrels to Hester and retain ten barrels without becoming responsible for the whole tweney-five barrels when it is shown that Hester was not an agent of Henderson. But no such knowledge was possessed by the appellant in this case; he received four dozen hats that he had bought and twenty-three and two thirds dozen more, which latter belonged to the appellee, and which he forthwith returned.

It would be a harsh rule indeed if the buyer of property after making a binding contract for a certain amount and the seller, in order to sell more, would de-

liver in excess of that contract any amount with the hope that if the buyer took what he contracted for he would have to pay for the excess.

I contend that Rubenstein had a perfect right to retain his own goods; according to his testimony there was no mistake involved in the transaction and to hold otherwise would be unfair to the purchaser and I contend further that the language of this court above referred to is not applicable to the facts of this case, and is not an abstract rule of law to be applied to this particular case. Because as the opinion recites: "Ormonde frankly states that when he got the invoice and bill of lading, he saw that Hester had no sugar and that the twenty-five barrels of sugar sent by Henderson were intended as a sale from Henderson to him, but as he wanted only ten barrels, he received in his store only ten barrels, and turned over the bill of lading for the remaining fifteen barrels to Hester, to be disposed of by him, supposing Hester to be Henderson's agent. In such supposition Ormond was mistaken."

If Rubenstein has testified the truth about the matter of buying four dozen hats, those four dozen hats and twenty-three and two thirds dozen more were sent him instead of his contract, he availed himself of his right, took that which he had purchased and returned that which he did not purchase; and the better rule of law would be that he had a perfect right to do this. How could it be right and fair to Rubenstein to say that it is true that you bought only four dozen hats, but the appellee, in order to sell you more hats sent you twenty-seven and two thirds dozen hats but you cannot take your hats out of the shipment; you cannot touch them, for if you do take your hats you, by operation of law, take all the hats? It is true we recognize your contract, we recognize your bargain, but by the operation of law you are denied your rights under your contract. It ought to be the law that the purchaser can hold the seller

to his contract and that when the seller sent what he has purchased and more too that simply because the buyer takes that which he is rightfully entitled to, the seller could not make him pay for more. If it can be said that the law is otherwise in this state, with all difference to the law, it is a harsh rule, and that good morals and fair treatment demand that the purchaser should have what he bargained for. Benjamin on Sales, 531 (Fourth American Edition) lays this rule down:

"Where the seller delivers a greater amount of the article ordered than the buyer has ordered or agreed to receive, the buyer may repudiate the whole; and if he accepts part he will be liable to pay for so much only as he takes."

I submit that Rubenstein, according to his testimony has complied with this rule, and if his testimony be true should only pay for the hats retained.

This rule was adhered to in the supreme court of Michigan, case of *Larkin* v. *Mitchell* 42 Mich. 296.

I submit the question as to whether the appellant herein bought the whole lot of hats sued for or four dozen should have been submitted to the jury, and that the peremptory instruction given for the appellee was error, and for this reason the cause should be reversed.

*T. C. Hannah* and *John Haney,* for appellee.

Appellant's whole case is based on the claim that he had a right to select from the lot of hats shipped him the three or four dozen hats that he had bought. The weakness of his case and fallacy of his argument lies in the fact that he had not bought any three or four dozen specific hats. The testimony of appellant shows conclusively that he traded with reference to an entire lot of hats, and that he did not select and identify one single solitary hat as being purchased by him. This case, therefore, reverts to a fundamental principle of the law of sales that there must be a meeting of the minds.

In order for there to be a meeting of the minds the property with reference to which the contract is made must be definitely ascertained. Quoting from Mecham on Sales, Section 695:

"As has been already seen, it is absolutely indispensable to a completed sale that the chattel which is the subject of the sale shall be ascertained and identified. The minds of the parties must meet in reference to some specific chattel, or otherwise there will remain but a mere agreement to sell, which has yet to be applied to some specific chattel in order to consummate the sale. As is said by Bigelow, C. J., 'Until the parties are agreed as to the specific, identical goods, the contract can be no more than an agreement to supply goods of a certain kind or answering a particular description. The reason of this is obvious. There can be no transfer of property until the parties have ascertained and agreed upon the articles sold. Before they are designated and set apart in some form, there is nothing to which the contract of sale can attach or on which it can operate.''

Was the property so identified in the case at bar? The testimony of the appellant shows that the only manner in which the property was identified was by a certain job lot of hats. That he agreed to take a certain job lot of hats, provided that there was not more than three or four dozen but that he did not pick out and select any particular hat or hats that he was to receive. Then the identical thing with reference to which the contract was made was the job lot of hats and not any designated identical hat from said lot. According to the testimony of appellant he traded with reference to this lot of hats but there was a mistake or misrepresentation as to the quantity of the hats in this lot. Quoting from 35 Cyc, page 61:

"Mistake as to quantity. Where there is a contract for the sale of specific goods, mistakenly estimated to comprise a certain quantity, and the actual quantity is

materially more or less than the estimated quantity, there is no mutual assent.''

This, then, brings this case squarely within the rules announced in *Ormond* v. *Henderson*, 77 Miss. 34, 24 So. 170. The testimony in the case at bar shows that appellant was in New Orleans and could have ascertained the exact number of hats in this particular lot. That he did not do so. According to his own testimony he bought this lot of hats on the condition that there would not be more than three or four dozen. He states in his testimony (page 49) that he first learned of the quantity of hats shipped him when he received the invoices. That he then had these goods hauled to his store, opened and unpacked all of the twenty-seven and one-third dozen hats, and selected from the entire lot three and two-thirds dozen and repacked and returned to appellee the balance. What was the duty of appellant when he received this invoice and learned that twenty-seven and one-third dozen hats of this lot had been shipped to him? We answer this question in the language of *Ormond* v. *Henderson*, 77 Miss. 34, 24 So. 170.

''When Ormond & Company learned of the mistake made by Henderson in shipping to them the twenty-five barrels of sugar, which W. H. Ormond states he did learn when he received the account of sale of it to them, and the bill of lading of same, it was competent for them to refuse to accept sugar. But they could not accept a part without Henderson's consent. Where a mistake is made in reference to the quantity of goods, the buyer must accept all or refuse to accept any, and give the seller notice of the mistake and that the goods are subject to his order. He cannot deal with the goods as his own, as Ormond certainly did in this case, without rendering himself liable for the purchase price.'' Benjamin on Sales, 160.

Counsel for appellant strongly contends that the appellant had the right to select from the lot of hats

shipped to him the four dozen hats that he contracted to buy and return the balance. As above stated, the fallacy of this argument rests in the fact that Rubenstein had not bought any particular four dozen hats. What four dozen hats would the appellant select? This was a job lot of hats, that is, a lot of hats varying grades, shapes, sizes, quality, and price (Record page 31). The testimony shows that a uniform price was agreed upon provided the appellant would accept the entire lot. We most respectfully submit that under the testimony of appellant that he was bound to accept the goods tendered to him. In 35 Cyc. it is said: "If, however, the sale is in bulk, the quantity being estimated at 'about' a certain quantity 'more or less,' a delivery of the whole is a good delivery, although the actual quantity is much less or much greater than the quantity specified." Citing, among other cases, *Brawley* v. *United States,* 96, U. S. 168, 24 Law Edition 622.

We respectfully submit that this entire record, and the testimony of appellant himself, if you please, shows conclusively that this transaction was entire, and was for this particular identical lot of hats. The appellant, was, therefore, bound to either accept the entire lot or to reject the entire lot. Mechem on Sales, section 1398. "Effect of acceptance or rejection in part.

"Where the contract is entire, even though it be one for several lots or articles, the vendee is not obliged to accept a portion only; he may insist upon having all or none. He has, however, usually, no right to accept a part and to reject the residue as not conforming to the contract. He must accept or reject *in toto,* and, if he sees fit to reject, he must put the seller *in statu quo.*" Cases cited.

We, therefore, most respectfully submit that the appellee has complied with every obligation imposed upon it, and that if the appellant had any rights whatever with reference to this sale because of representation as to

quantity that these rights have been waived by the acceptance of a portion of the goods shipped. We, therefore, submit that the judgment of the circuit court is correct on the law and on the facts, and that it should be affirmed.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). Conceding that appellant's version of this matter is true, appellee's offer was to sell him the entire "job lot" of hats at three dollars and fifty cents per dozen, and he agreed to accept the entire lot at this price, provided it did not contain more than three or four dozen. This being true, when he received the hats and ascertained that the lot contained more than three or four dozen, the duty devolved upon him of accepting or rejecting the lot as a whole. He could not without appellee's consent, accept a part and reject a part.

The argument of counsel for appellant is based upon the theory that appellant's agreement was to purchase three or four dozen hats of the lot in question. Conceding, for the sake of the argument, that if the fact was as thus stated, the case would fall within the rule applied in *Hutchins* v. *Smith Harrison & Co.*, 64 So. 789, it is clear from the evidence that appellant's agreement to purchase was as outlined in his testimony hereinbefore set out. It is true that in answer to leading questions propounded to him by his counsel he stated that he agreed to purchase three or four dozen hats; but he also stated over and over again, that his agreement was as hereinbefore outlined.

*Affirmed.*